**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| MITTERNIGHT BOILER WORKS, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Civ. Act. No.: 1:24-CV-294-TFM-B |
| | ) | |
| ICL SPECIALTY PROUCTS, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |

# MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff's Motion for Judgment on the Pleadings (Doc. 59, filed 9/17/25), Defendant's Motion to Strike Expert Opinion of William Newell (Doc. 83, filed 12/19/25), Plaintiff's Motion to Exclude Defendant's Expert Witness (Doc. 84, filed 12/19/25), Plaintiff's Motion for Summary Judgment (Doc. 75, filed 11/21/25) and Defendant's Motion for Summary Judgment (Doc. 77, filed 06/30/25). Each party timely submitted their respective responses and replies. *See* Docs. 68, 70, 87, 88, 90, 94, 96, 97, 99, 100. Having considered the motions, responses, replies, evidentiary submissions in support of the motions, and relevant law, the Court finds as follows: Plaintiff's motion for judgment on the pleadings (Doc. 59) is due to be **GRANTED**, Defendant's motion to strike Plaintiff's expert (Doc. 83) is due to be **DENIED**, Plaintiff's motion to strike Defendant's expert (Doc. 84) is due to be **DENIED**, and both motions for summary judgment (Docs. 75, 77) are due to be **GRANTED in part and DENIED in part**.

## I. PARTIES AND JURISDICTION

Plaintiff/Counterclaim Defendant Mitternight Boiler Works Inc., ("Plaintiff" or "Mitternight") is an Alabama corporation with its principal place of business in Alabama and is therefore a citizen of Alabama for jurisdictional purposes. Defendant ICL Specialty ("Defendant"

or "ICL Specialty") is a corporation formed under the laws of Delaware with its principal place of business in Missouri and is therefore a citizen of Delaware and Missouri for jurisdiction purposes. The amount in controversy exceeds $75,000. *See* Doc. 1 at 5-6. The Court has subject matter jurisdiction and venue over this matter pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).[1]

The parties do not contest jurisdiction or venue, and the Court finds sufficient support exists for both.

## II. BACKGROUND

### A. Factual Background

On or around July 27, 2022, the parties entered into a Framework Agreement regarding the potential purchase of goods by ICL from Mitternight. *See* Doc. 77-1 at 2; Doc. 75 at 3. The parties executed the Framework Agreement after ICL sought bids for the fabrication of industrial equipment, specifically a tube bundle, and ICL awarded the project to Mitternight. Doc. 75 at 4. On or around August 2, 2022, ICL issued a Purchase Order to Plaintiff for fabrication of the tube bundle pursuant to the terms of the Framework Agreement. Doc. 77-1 at 3. Mitternight acknowledged receipt of the Purchase Order on or around August 4, 2022. Doc. 75 at 4. Mitternight's order acknowledgement estimated delivery of the tube bundle 50 weeks after receipt and issuance of approved shop drawings from ICL. *Id.* The initial Purchase Order contained a delivery date of September 1, 2023. Doc. 77-1 at 4. However, revised purchase orders were later entered which set a delivery date of December 31, 2023. *Id.*

[1] Plaintiff's original complaint included an additional Defendant, ICL Europe Cooperatief U.A. *See* Doc. 1-2. However, the parties filed a motion to dismiss ICL Europe Cooperatief U.A., which the Court granted. *See* Docs. 86, 89, 92, 101. Thus, ICL Europe Cooperatief U.A. was dismissed from this action with prejudice.

The Framework Agreement provided that Mitternight was to give written notice to ICL for any delay in delivery of a product. *Id.* at 2; Doc. 77-4 at 6. The Framework Agreement further provides that "delay of more than 28 days with respect to the delivery date shall be deemed a material breach of this Agreement and Purchaser shall have the right to terminate this Agreement unilaterally with immediate effect." Doc. 77-4 at 6. For other alleged breaches not related to the delay of more than 28 days, the Framework Agreement requires written notice of intent to terminate for an alleged material breach and a mandatory 14-day cure period, unless the breach cannot be remedied in which case immediate termination is available. *Id.* at 12. Additionally, the Framework Agreement includes a nonwaiver clause. *Id.* at 14.

The parties worked together and exchanged additional information and specifications in order for Plaintiff to build out a new and complete set of shop drawings. Doc. 75 at 5. This was necessary because the only materials to work from were old engineering drawings from the 1980s that were prepared for the original tube bundle. *Id.* at 4. Mitternight submitted the initial shop drawings for ICL's review and approval on November 17, 2022. *Id.* at 5. ICL returned its comments on the drawings on January 25, 2023. *Id.* Mitternight submitted revised shop drawings on March 22, 2023, which ICL returned and approved on May 4, 2023. *Id.* Mitternight also submitted Inspection and Testing Protocol ("ITP") to ICL for approval on March 31, 2023, and asserts that ICL never returned the signed and approved ITP at any point. *See id.* at 5.

On March 26, 2024, ICL issued a notice to Mitternight that it was considering a declaration of a contractor default and termination of the contractual agreements because the tube bundle was required to be delivered on or before December 31, 2023 based on the dates listed in the purchase order but, based on the most recent schedule provided by Mitternight, the project would not be completed until June 2024 or later. Doc. 77-1 at 4; Doc. 77-12. The March 26, 2024 notice did

not reference any alleged issues with workmanship or any other default besides untimely delivery. *See* Doc. 77-12. On April 15, 2024, Mitternight responded that the substantial delays resulted from ICL's failure to timely return approved, necessary drawings, welding procedures, and the ITP, along with ICL's required change in radiographic inspection which resulted in Mitternight moving from two x-rays of each weld to three. Doc. 75 at 7-8. On April 25, 2024, ICL instructed Mitternight to stop making new welds on the project and to only work on portions of the project that had already been started. *Id.* at 8. On May 15, 2024, ICL corresponded with Mitternight and again stated that Mitternight was unable to timely deliver the tube bundle and that ICL had the right to terminate the agreement on that basis. Doc. 77-15. Additionally, ICL proposed moving the tube bundle from Mitternight's property and transfering it to an undisclosed third-party for completion of the tube bundle, along with any key documentation, drawings, and other materials associated with the tube bundle. *Id.* Further, ICL declined further payment for any outstanding work or past change orders. *Id.* On May 23, 2024, Mitternight responded that it would agree to release the tube bundle and requested documentation so long as ICL agreed to pay it for the increased costs associated with changing the x-ray procedures from two shots to three. *Id.* at 8-9. ICL declined. *Id.* at 9.

On June 19, 2024 ICL representatives traveled to Mitternight's facilities to inspect the tube bundle and conduct a meeting with Mitternight representatives to come up with a plan to move forward. Doc. 75 at 9. ICL's representative agreed during that meeting to "bury the hatchet" and the parties agree that "all's forgiven but we got to get this thing done." *Id.* Mitternight asserts that the meeting resulted in a plan moving forward to finish and deliver the tube bundle by August 31, 2024, though ICL disputes that any final path forward was ever agreed upon. *Id.*; Doc. 87 at 4.

Hoewever, the parties agree that by June 28, 2024, ICL released Mitternight to resume new work on the project. Doc. 75 at 10; Doc. 87 at 4.

On July 9, 2024, ICL conducted a site visit to follow up on the tube bundle progress and learned that the project was just over 50% complete. Doc. 75 at 10; Doc. 77-1 at 5. During the visit, ICL concluded Mitternight was performing faulty work. Doc. 75 at 10; Doc. 77-1 at 5. On July 16, 2024, ICL sent Mitternight an email stating that, to avoid ICL filing a lawsuit, Mitternight needed to turn the tube bundle over to ICL, repay ICL the money it paid for the tube bundle thus far, and pay ICL an additional $310,000 for additional losses. Doc. 75 at 11; Doc. 77-1 at 6. ICL gave Mitternight two days to respond. Doc. 75 at 11. In response to the correspondence, on July 18, 2024, Mitternight filed this lawsuit. *Id.*

During all of the above, on May 16, 2024, ICL entered into a Goods and Services Agreement with a third-party, Enerfab Process Solutions, LLC ("Enerfab"). Doc. 77-1 at 5. This agreement, like the Framework Agreement, was not a purchase of goods or services but rather an agreement as to the terms of any future purchase of goods or services. *Id.* On September 6, 2024, ICL sent Plaintiff a formal notice of termination of all agreements between the parties. *Id.* at 6. On September 30, 2024, ICL and Enerfab amended the Goods and Services Agreement to include the scope of work for Enerfab to fabricate a new tube bundle. *Id.* On October 8, 2024, ICL issued a purchase order to Enerfab for fabrication of a new tube bundle. *Id.*

**B. Procedural Background**

Mitternight filed its original complaint in the Circuit Court of Mobile County on July 18, 2024. *See* Doc. 1-2. Mitternight asserts claims for declaratory judgment, breach of contract, goods sold and manufactured, quantum meruit, and quasi contract/unjust enrichment. *See* Doc. 1-2. On August 20, 2024, ICL removed the case to this Court and filed its answer and counterclaims. *See*

Docs. 1, 2. ICL asserts counterclaims for breach of contract, breach of warranty, negligence, and nondelivery of goods pursuant to Ala. Code § 7-2-713. *See* Doc. 2.

On September 17, 2025, Mitternight filed the instant motion for judgment on the pleadings. Doc. 59. Mitternight argues that judgment is due to be granted in its favor on ICL's negligence counterclaim. *See id.* ICL filed a response and Mitternight filed a reply. Docs. 68, 70. On November 21, 2025 the parties filed the instant motions for summary judgment. *See* Docs. 75, 77. ICL argues that it is entitled to summary judgment on all of Mitternight's claims against it but did not move to summary judgment as to its counterclaims. *See* Doc. 77. Mitternight argues that it is entitled to summary judgment on all counterclaims asserted against it but did not move for summary judgment as to its claims. *See* Doc. 75. Both parties timely submitted their responses and replies. *See* Docs 87, 88, 90, 94. On December 19, 2025, the parties also each filed a Daubert motion. *See* Docs. 83, 84. Mitternight seeks to have ICL's expert witness, Wes Turner, excluded, while ICL seeks to have Mitternight's expert witness, William Newell, excluded. *See* Docs. 83, 84. Both parties timely submitted their respective responses and replies. *See* Docs. 96, 97, 99, 100.

## III. STANDARDS OF REVIEW

### A. Fed. R. Civ. P. 12(c)

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is appropriate when "no issues of material fact exist, and the movant is entitled to judgment as a matter of law." *Ortega v. Christian*, 85 F.3d 1521, 1524-25 (11th Cir. 1996). When reviewing a judgment on the pleadings, the court must accept the facts in the complaint as true and view them in the light most favorable

to the nonmoving party. *Id.* A judgment on the pleadings is limited to consideration of "the substance of the pleadings and any judicially noticed facts." *Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998). In other words, a Fed. R. Civ. P. 12(c) motion "is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard of review to a Fed. R. Civ. P. 12(c) motion).

Eleventh Circuit precedent discussing the standard of review for a motion under Fed. R. Civ. P. 12(c) indicates "[j]udgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002) (quoting *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1213 (11th Cir. 2001)); *see also Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002) ("If upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint."). These cases have not yet been explicitly overturned. However, that same language was previously utilized in the context of a Fed. R. Civ. P. 12(b)(6) motion to dismiss prior to *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In *Twombly*, the Supreme Court explained that this "no set of facts" language "earned its retirement" because it is simply "an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. As caselaw is clear that the standards are functionally identical for a Fed. R. Civ. P. 12(b)(6) and 12(c) motion, the Court will apply the Twombly standard. *See, e.g.*, *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (applying Twombly to a Fed. R. Civ.

P. 12(c) motion); *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549-50 (6th Cir. 2008) (same); *Doe v. MySpace Inc.*, 528 F.3d at 418 (same); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (same).

As a result, the Court must draw "all reasonable inferences in the [non-movant's] favor." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). However, the Court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The U.S. Supreme Court has suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 556 U.S. at 682).

**B. Fed. R. Evid. 702**

Federal Rule of Evidence 702 provides that "a witness qualified as an expert by knowledge, skill, experience, training or education" may offer opinions related to his expertise if his opinions are sufficiently reliable and relevant to the case. FED. R. EVID. 702. Expert testimony may be admitted into evidence only if the expert is qualified to testify competently regarding the matters he intends to address. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 2795, 125 L. Ed. 2d 469 (1993). The Eleventh Circuit has held:

> [e]xpert testimony may be admitted into evidence if (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists

> the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998). "While there is inevitably some overlap among the basic requirements — qualification, reliability, and helpfulness — they remain distinct concepts and the courts must take care not to conflate them." *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (citation omitted). The district court has "broad discretion in determining whether to admit or exclude expert testimony, and its decision will be disturbed on appeal only if it is manifestly erroneous." *Evans v. Mathis Funeral Home*, 996 F.2d 266, 268 (11th Cir. 1993). Put another way, the decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005).

**C. Fed. R. Civ. P. 56**

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "[T]he substantive law will identify which facts are material." *Id.* at 248. At the summary judgment stage, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Id.* at 249. The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). An issue is genuine

if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (citing *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993)). For factual issues to be considered genuine, they must have a real basis in the record. *Id.*

The party asking for summary judgment bears the initial burden of showing the material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23. A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations…admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County,* 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal quotations omitted)(citing *Celotex*, 477 U.S. at 324). The court must view facts and draw all reasonable inferences in favor of the non-moving party. *Moore v. Reese*, 637 F.3d 1220, 1231 (11th Cir. 2011)

(citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)). However, to avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likely insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Finally, Fed. R. Civ. P. 56(e) also provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

## IV. DISCUSSION AND ANALYSIS

### A. Mitternight's Motion for Judgment on the Pleadings

Mitternight moves the Court to enter judgment on the pleadings in its favor as to ICL's negligence counterclaim. Specifically, Mitternight argues that ICL's negligence claim is a repackaged breach of contract claim that seeks damages for purely economic losses stemming from the failure to conform to contractual requirements, which is impermissible under Alabama law. ICL counters that its negligence claim is based upon misfeasance, rather than nonfeasance, and therefore states a cognizable claim under Alabama law.

> Alabama law "does not recognize a tort-like cause of action for the breach of a duty created by a contract." *McClung*, 2012 U.S. Dist. LEXIS 63834, 2012 WL 1642209, at *7, citing *Blake*, 845 F. Supp. 2d at 1210. "[A] negligent failure to perform a contract . . . is but a breach of the contract." *McClung*, 2012 U.S. Dist. LEXIS

> 63834, 2012 WL 1642209, at *7, quoting *Blake*, 845 F. Supp. 2d at 1210; *see also Barber v. Bus. Prods. Ctr., Inc.*, 677 So. 2d 223, 228 (Ala. 1996), overruled on other grounds by *White Sands Grp., LLC v. PRS II, LLC*, 32 So. 3d 5 (Ala. 2009) ("a mere failure to perform a contractual obligation is not a tort"). "A tort claim can only be asserted when the duty of reasonable care, which one owes to another in the course of day-to-day affairs, has been breached and causes personal injury or property damages." *McClung*, 2012 U.S. Dist. LEXIS 63834, 2012 WL 1642209, at *7 (citing *Blake*, 845 F. Supp. 2d at 1209-10).

*Buckentin v. SunTrust Morg. Corp.*, 928 F. Supp. 2d 1273, 1289-90 (N.D. Ala. 2013); *see also TFO, Inc. v. Vantiv, Inc.*, Civ. Act. No. 1:16-cv-00971-SGC, 2017 WL 1196851, 2017 U.S. Dist. LEXIS 48508, at *7 (N.D. Ala. Mar. 31, 2017) (finding *Buckentin* persuasive and dismissing plaintiff's claim for wantonness because it arose out of the breach of contract claim).

The Alabama Supreme Court has further explained that nonfeasance, or a party's failure to perform a promise, is not actionable under a negligence claim whereas misfeasance, which encompasses tortious conduct in the performance of a promise, can result in a cognizable negligence claim. *See Morgan v. S. Cent. Bell Tel. Co.*, 466 So. 2d 107, 114 (Ala. 1985). Specifically,

> [t]here is, in Alabama, no tort liability for nonfeasance for failing to do what one has promised to do in the absence of a duty to act apart from the promise made. On the other hand, misfeasance, or negligent affirmative conduct in the performance of a promise generally subjects an actor to tort liability as well as contract liability for physical harm to persons and tangible things.

*Id.* ICL argues that Mitternight performed its fabrication work on the tube bundle in such a negligent and slipshod manner that ICL was forced to continue using its existing tube bundle long past the original planned delivery date for ICL's tube bundle, causing the aging tube bundle to suffer damage and leading to significant repair costs to keep that tube bundle operating.

This Court agrees with Mitternight that Alabama law prohibits a negligence claim in this instance. First, the Court finds that the conduct here is nonfeasance, rather than misfeasance. Mitternight did not deliver the tube in time, which means Mitternight ultimately did not perform

(or has not yet performed). Additionally, before Mitternight could complete performance ICL terminated the contract, and the termination cut off any obligation for Mitternight to deliver the tube bundle. Had Mitternight delivered the tube bundle and the tube bundle manufactured by Mitternight malfunctioned in some way, causing property damage, that instance might amount to misfeasance. However, in this case, Mitternight, whether negligent in failing to timely perform or not, did not perform and the failure to perform is what put ICL in this predicament. Furthermore, ICL, knowing that Mitternight was not going to timely deliver the tube bundle, and knowing that the existing tube bundle was breaking down and needed repairs, could have stopped running the tube bundle and taken business losses, which presumably would have been recoverable under a breach of contract theory. Instead, ICL made the business decision to keep running the tube bundle and to make costly repairs. Either way, these are economic losses to ICL caused by Mitternight's failure to timely perform, not property damages due to any alleged negligence by Mitternight.

Accordingly, Mitternight's motion for judgment on the pleadings on ICL's negligence counterclaim is due to be granted and ICL's negligence claim is due to be dismissed.

**B. ICL's Motion to Exclude William Newell**

ICL moves the Court to exclude the opinions of Mitternight's expert, William Newell, because his opinions merely restate and emphasize the expert opinions of non-disclosed experts and he is simply a "mouthpiece" for the opinions of others. *See* Doc. 83 at 1. Additionally, ICL moves the Court to "prevent Mitternight from offering any expert testimony from its employees or authorized inspector, as they have not been disclosed as witnesses." Doc. 83 at 1.

The Court notes that Mitternight states it does not intend to offer any expert testimony other than the expert testimony from William Newell. Doc. 97 at 7. Accordingly, ICL's blanket request for the Court to prevent Mitternight from offering any undisclosed witness testimony is premature.

Should Mitternight attempt to introduce such testimony at trial, ICL can raise the issue at that time. The Court will, however, address ICL's motion as it pertains to Newell.

Newell inspected the tube bundle on October 22, 2025. Doc. 83 at 2; Doc. 83-1 at 5. During that time he also spoke with Mitternight employees. Doc. 83-1 at 4-5. He opines that Mitternight "met industry standards relating to welding fabrication when compared to similar projects in the petrochemical and power industries at the time." Doc. 83-2 at 8. ICL argues that, in stating "the fact that the Mitternight inspection folks and the authorized inspector signed off on everything, they at least met the code, and that was the standard we had to meet first" and "no Authorized Inspector would approve equipment or documentation that did not meet the specified code and engineering requirements[,]" Newell is acting as a mouthpiece for the Authorized Inspector rather than stating his own opinion and should therefore be excluded. *See generally* Doc. 83. ICL does not set forth an argument that Newell himself is not qualified based on his knowledge, skill, experience, training, or education. Rather, ICL argues that his methodology in relying upon the Authorized Inspector's findings and documentation from Mitternight is unreliable. *See* Doc. 83 at 5-6.

"Expert opinions ordinarily cannot be based upon the opinions of others whether those opinions are in evidence or not." *American Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985) (finding that a purported expert's opinion that was based on unverified "facts" provided to him by a third party should be excluded because such unverified facts were not ordinarily the type an expert in his field would use to form an opinion). Though Rule 703 allows, in some circumstances, opinions based on facts or data otherwise inadmissible in evidence, "a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Schoen v. State Farm Fire &*

*Casualty Co.*, 638 F. Supp. 3d 1339, 1349 (S.D. Ala. 2022) (citations omitted). Furthermore, "Rule 703 'does not permit an expert to simply repeat or adopt the findings of another expert without attempting to assess the validity of the opinions relied upon.'" *Schoen v. State Farm Fire & Casualty Co.*, 638 F. Supp. 3d 1339, 1349 (S.D. Ala. 2022) (quoting *La Gorce Palace Condo. Ass'n, Inc., v. Blackboard Specialty Ins. Co.*, 586 F. Supp. 3d 1300, 1306 (S.D. Fla. 2022)). The Supreme Court has provided, however:

> [A]n expert is permitted wide altitude to offer opinions, including those that are not based on firsthand knowledge or observation. Presumably, this relaxation of the usual requirement of firsthand knowledge . . . is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.

*Daubert*, 509 U.S. at 592. In short, so long as the expert is relying on the sort of information experts in its field would rely upon, an expert may rely on the studies, reports, or expertise of others.

Newell has extensive experience in welding. *See* Doc . 97-1 at 3-5. His report provides that his opinions are based on his education, training, industry knowledge/experience, documents produced from the parties, recognized codes and standards, and research, data, and practices recognized in the industry. *See id.* at 5. Upon review of his deposition, it is clear that Newell inspected the tube bundle and welds himself, along with reviewing photographs and a comprehensive document package that including test reports, welding logs, welder qualifications, and welding procedures. *See* Doc. 83-1. Thus, Newell does not appear to be merely regurgitating the findings of the Authorized Inspector or any Mitternight employee. Rather, Newell conducted his own visual inspection and found it appeared to be in line with the related documentation from the Authorized Inspector. To the extent Newell may have taken the Authorized Inspector or Mitternight employees at their word that inspections were passed or procedures were followed, or

to the extent ICL believes his inspection was too brief or not thorough enough, ICL can adequately address such concerns on cross examination.

Additionally, the Court notes that this is a bench trial. Therefore, the Court will act as the factfinder. In such situations, courts have found that the traditional *Daubert* analysis may be somewhat relaxed. *See, e.g.*, *United States v. Brown*, 415 F.3d 1257, 1268-69 (11th Cir. 2005) ("Those barriers are even more relaxed in a bench trial situation, where the judge is serving as factfinder and we are not concerned about dumping a barrage of questionable scientific evidence on a jury. . .. There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.") (citations and internal quotation marks omitted); *see also Bobo v. TVA*, 885 F.3d 1294 (11th Cir. 2017) (quoting *Brown* and stating same); *United States v. Wood*, 741 F.3d 417, 425 (4th Cir. 2013) ("[B]ecause the district court was also the trier of facts, the district court's evidentiary gatekeeping function was relaxed, and the district court was in the best position to decide the proper weight to give the expert opinions."); *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006) ("[W]here the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702."); *Braggs v. Dunn*, Civ. Act. No. 2:14-cv-601-MHT, 2017 U.S. Dist. LEXIS 108548, *17, 2017 WL 2984312, *3 (M.D. Ala. Jul. 13, 2017) ("[T]he *Daubert* barriers to admissibility are more relaxed in a bench trial, 'where the judge is serving as factfinder,' and the court need not be 'concerned about dumping a barrage of questionable scientific evidence on a jury.'") (quoting *Brown*)). Therefore, the need to exclude or allow such testimony prior to hearing the testimony at trial is lessened. Accordingly, if any additional issues regarding Newell arise during trial, ICL can raise them at that time.

**C. Mitternight's Motion to Exclude Wes Turner**

Mitternight moves the Court to exclude ICL's expert, Wes Turner, arguing that ICL's expert disclosure fails to comply with Fed. R. Civ. P. 26 and that Turner's opinions do not satisfy the reliability and helpfulness requirements of Fed. R. Evid. 702.

Rule 26 governs the disclosure of expert witness testimony. Fed. R. Civ. P. 26. A full written report is required if a witness is "retained or specially employed to provide expert testimony." Fed. R. Civ. P. 26(a)(2)(B). For non-retained experts, while a written report is not required, disclosures for non-retained experts must include "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703 or 705" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

Under Federal Rule of Civil Procedure 37(c)(1), when "a party fails to provide information or identify a witness as required by [Fed. R. Civ. P.] 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1); *Coleman v. Boston Sci. Corp.*, Civ. Act. No. 1:17-cv-439-TFM-C, 2020 WL 7090700, 2020 U.S. Dist. LEXIS 235061, at *11 (S.D. Ala. Sept. 22, 2020). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (citing *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006)).

Mitternight argues that ICL's failure was not substantially justified because "ICL simply failed to submit an expert witness report for Turner, and there can be no genuine dispute that ICL fell short of what is required." Doc. 84 at 9-10. Mitternight further argues that ICL's failure was not harmless because "allowing ICL to belatedly comply with Rule 26 would interrupt these

proceedings" and "derail the case and essentially reward ICL for its dereliction." *Id.* at 10. Mitternight does not explain how, exactly, the case would be derailed.

The Court has reviewed Mitternight's arguments and the expert disclosure for Newell, and finds that, to the extent Newell is a non-retained expert, there are no issues with the disclosure. For a retained expert, however, the disclosure appears to be deficient. Thus, the Court turns to whether the deficiency is substantially justified or harmless.

There does not appear to be any substantial justification for the deficiency of Newell's disclosure as a retained expert. The Court finds, however, that any deficiency is harmless and therefore does not warrant his exclusion. First, Mitternight only vaguely argues that the deficiency is not harmless because it will "interrupt the proceedings" and "derail the case." However, the trial in this case has been continued generally and there are currently no looming trial deadlines that the parties are operating on. *See* Doc. 101. Additionally, Mitternight has had the opportunity to depose Newell at length about his opinions, negating any concerns about surprise. To the extent that Mitternight *might* suffer any harm or prejudice, the Court will permit Mitternight to file a motion to reopen Newell's deposition, provided that Mitternight explains the specific deficiencies it wishes to address in further questioning.

Accordingly, the Court finds that to the extent that Newell is a retained expert, his expert disclosure is deficient, but that deficiency is harmless and therefore the Court declines to exclude him on that basis.

As for its arguments under Fed. R. Evid. 702, Mitternight argues that Turner should be excluded because his methodology is unreliable. Additionally, Mitternight argues that Turner's opinions and testimony would be unhelpful to the trier of fact. All of the concerns that Mitternight raises in its motion are concerns that go to the weight, rather than the admissibility of Turner's

testimony. Additionally, as noted in the previous section, this is a bench trial. Thus, there is less concern for the Court to gatekeep from itself as the Court may later exclude or disregard the expert's testimony it if it turns out not to meet the standard of reliability established by Rule 702.

**D. ICL's Motion for Summary Judgment**

ICL filed a motion for summary judgment seeking judgment in its favor on all of Mitternight's claims. *See* Doc. 77. First, ICL argues that Mitternight's quasi contract claims, including its claims for goods sold and manufactured, quantum meruit, and unjust enrichment, fail because there is an express written contract governing the same subject matter. Second, ICL argues Mitternight's breach of contract claim fails because Mitternight did not meet its own obligations under the contract, and because Mitternight failed to produce any evidence of breach by ICL prior to ICL's valid termination of the agreement. Third, ICL argues that Mitternight's claim for declaratory relief should be denied because the contracts at issue have been terminated and declaratory relief would serve no useful purpose. The Court addresses each argument in turn.

**i. Mitternight's quasi contract claims**

Mitternight asserts three claims that arise under "quasi contract" theories—goods sold and manufactured, quantum meruit, and unjust enrichment. ICL argues that summary judgment should be granted in its favor on these quasi contract claims because there is an express contract that governs the same subject matter. Doc. 77-1 at 7-8. Mitternight concedes its quasi contract claims, *see* Doc. 88 at 19, and the Court agrees with the parties that summary judgment is due to be granted on them. Alabama law is clear that "[t]he existence of an express contract on a given subject generally excludes an implied agreement on the same subject." *Mantiply v. Mantiply*, 951 So. 2d 638, 656 (Ala. 2006) (citing *Vardaman v. Florence City Bd. of Educ.*, 544 So.2d 962 (Ala. 1989)).

Accordingly, Mitternight's quasi contract claims for goods sold and manufactured,

quantum meruit, and unjust enrichment are due to be denied, and summary judgment is due to be granted in favor of ICL on those claims.

**ii. Mitternight's breach of contract claim**

ICL argues that summary judgment is due in its favor on Mitternight's breach of contract claim because Mitternight did not meet its own obligations under the contract, and because ICL's termination of the contract was valid. Specifically, ICL argues that Mitternight failed to timely deliver the tube bundle, and as a result ICL was entitled to terminate the contract and did so. Doc. 77-1 at 9-10. Mitternight counters that the record establishes genuine disputes of material fact on timely delivery, performance, waiver, and bad faith. *See* Doc. 88 at 13.

To prevail on a breach of contract claim under Alabama law, a party must establish: (1) the existence of a valid contract binding the parties in the action, (2) its own performance under the contract, (3) the [other party's] non-performance, and (4) damages. *Ex parte American Heritage Life Ins. Co.*, 46 So.3d 474, 477 (Ala. 2010) (citing *Congress Life Ins. Co. v. Barstow*, 799 So. 2d 931, 937 (Ala. 2001)); *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (quoting *Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105 (Ala. 2002)). Further, "there is an implied covenant that neither party [to a contract] shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract" and "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Hunter v. Wilshire Credit Corp*., 927 So. 2d 810, 813 n. 5 (Ala. 2005) (quoting *Lloyd Noland Found., Inc. v. City of Fairfield Healthcare Auth.,* 837 So. 2d 253, 267 (Ala. 2002)).

Additionally, under Alabama law, waiver is generally a question of fact, which must be decided by the factfinder. A court may determine the issue of waiver if only one reasonable inference can be drawn from the evidence; otherwise waiver is not typically a question of law. *See*

*McMillan, Ltd. v. Warrior Drilling & Eng'g Co.*, 512 So.2d 14, 38 (Ala. 1986) ("Nevertheless, the viability of each of these defenses is a factual determination that must be left to the trier of fact unless only one reasonable inference can be drawn from the evidence.") (citations omitted).

In this case, there are numerous questions of material fact that prevent the Court from ruling on Mitternight's breach of contract claim. First, there is a question as to whether ICL's own delay, including in the approval of shop drawings, welding procedures, and the ITP, had a hand in Mitternight's delayed delivery and may have resulted in excused or extended performance. There are also genuine questions of material fact as to whether there were workmanship issues with Mitternight's work, which bears on whether Mitternight performed its end of the contract. Additionally, Mitternight raises the issue of waiver and whether, in their conversation about "burying the hatchet", for example, ICL waived certain deadlines or earlier defaults. Further, there are issues of fact surrounding the additional x-rays that Mitternight undertook at ICL's request, and whether there were additional costs from those x-rays that are owed to Mitternight.

Ultimately, all of the issues present genuine disputes of material fact that cannot be resolved on summary judgment. Accordingly, ICL's motion for summary judgment is due to be denied as to Mitternight's breach of contract claim.

**iii. Mitternight's declaratory relief claim**

Finally, ICL argues that Mitternight's claim for declaratory judgment should be dismissed because the contract was properly terminated by ICL, and because any alleged breach by either party can be addressed through the competing breach of contract claims. Doc. 77-1 at 12-13. Mitternight counters that there are material disputes about the contract, including but not limited to the proper construction and application for liquidated damages, that preclude summary judgment on Mitternight's declaratory judgment claim. The Court agrees with Mitternight.

Mitternight seeks declaratory judgment that it has not caused inexcusable delays, that the tube bundle meets all the required standards, that ICL is bound to pay when the tube bundle is delivered, that Mitternight's heat treatment plan complies with the contract, that, upon hydrotesting of the tube bundle, ICL shall pay Mitternight the amount due under the contract, and that Mitternight breached the contract between the parties. All of these findings would require the Court to make findings of fact that are presently disputed. Thus, summary judgment is not appropriate.

Accordingly, ICL's motion for summary judgment as to Mitternight's declaratory judgment claim is due to be denied.

**E. Mitternight's Motion for Summary Judgment**

Mitternight filed a motion for summary judgment seeking judgment in its favor on all counterclaims asserted against in by ICL. First, Mitternight argues that the breach of contract theories related to workmanship nonconformities fail because ICL did not provide the contractually required notice and does not have expert proof of those claims. Second, Mitternight argues that the damages related to schedule delay are expressly limited by the contractual liquidated damages clause. Third, Mitternight argues that ICL's nondelivery claim fails because ICL's own failure to cooperate excused or extended any performance deadline, and because ICL's asserted cover is neither like-kind nor commercially reasonable. The Court addresses each argument in turn.

**i. ICL's breach of contract claim**

As to ICL's breach of contract claim, Mitternight makes three arguments for summary judgment in its favor. First, Mitternight argues that ICL failed to satisfy the notice-and-cure requirement for any workmanship-based default and therefore workmanship theories of breach are

barred. Second, Mitternight argues because delay, not workmanship, drives all claimed loss, the contract caps damages and bars consequential damages. Third, and similar to the second point, Mitternight argues that the Framework Agreement forecloses recovery beyond liquidated damages for delay.

The Framework Agreement provides that for termination due to material breach, ICL must give written notice of intent to terminate for material breach and a 14-day opportunity to cure, unless the breach is irreparable. *See* Doc.1-3 at 11. Additionally, the Framework Agreement provides that "a delay of more than 28 days with respect to the delivery date shall be deemed a material breach of this Agreement and Purchaser shall have the right to terminate this Agreement unilaterally with immediate effect." *Id.* at 5.

The most basic principle of contractual liability is that to prevail on a breach of contract claim there must be a contract binding the parties, performance by the party claiming a breach, lack of performance by the alleged breaching party, and damages. *See Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (quoting *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002)). Additionally, under Alabama law and principles of contract interpretation:

> [T]he intent of the contracting parties is discerned from the whole of the contract. Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning. If the court determines that the terms are unambiguous (susceptible of only one reasonable meaning), then the court will presume that the parties intended what they stated and will enforce the contract as written. On the other hand, if the court determines that the terms are ambiguous (susceptible of more than one reasonable meaning), then the court must use established rules of contract construction to resolve the ambiguity.

*Once Upon a Time, LLC v. Chappelle Props., LLC*, 209 So. 3d 1094, 1097 (Ala. 2016) (citing *Voyager Life Ins. Co. v. Whitson*, 703 So. 2d 944, 948 (Ala. 1997)). The Framework Agreement is a binding contract between the parties. ICL alleges that it performed under the contract, and

that Mitternight failed to perform. ICL further alleges that it suffered damages due to Mitternight's failure to perform. The Court finds that the terms of the Framework Agreement are unambiguous. Therefore, the Court will interpret the contract as written by the parties.

Mitternight is correct that any workmanship-based theory of breach of contract is barred. It is impossible for ICL to link any workmanship issues to its damages to establish breach of contract liability on that basis. ICL concedes that it did not provide the contractually required notice and cure to terminate the contract due to workmanship defects, and ICL does not allege that the purported workmanship breaches are irreparable and therefore warrant immediate termination. Rather, ICL terminated the contract without advance notice due to delay of more than 28 days in making delivery, which was permitted under the terms of the contract.[2] *See* Doc. 87 at 10; Doc. 1-3 at 5. Thus, because the contract was terminated the tube bundle was never delivered. While workmanship issues may or may not have had a hand in the delay, the reason the contract was terminated was because of Mitternight's delay. Thus, delay, not workmanship, is what caused ICL's damages. Per the contract, ICL could have given notice of its intent to terminate due to workmanship issues and given Mitternight the contractually required 14-day window to cure the workmanship issues. However, ICL instead opted to terminate the contract immediately and

---

[2] In its termination notice, ICL stated that it was terminating the contract pursuant to section 12.2 of the Framework Agreement because Mitternight "had materially breached its obligation under the Framework Agreement and Purchase Order" and because Mitternight "failed to remedy these material breaches, which include but are not limited to the failure to deliver the Tube Bundle by the agreed date . . .." The termination notice does not describe specifically any substandard workmanship, and the only specific issue mentioned is delayed delivery. Additionally, the termination notice references a March 26, 2024 correspondence as a prior notice of deficiencies. However, the March 26, 2024 notice relates only to delay and does not provide notice as to any manufacturing defects that needed to be remedied. Furthermore, ICL indicates in its response to Mitternight's motion for summary judgment that it was permitted to terminate the agreement immediately without notice due to delay, and appears to abandon any argument that the agreement was effectively **terminated** due to any reason beyond delay. ICL does not, however, abandon its argument that Mitternight's workmanship was substandard.

without giving Mitternight the opportunity to cure through the provision that allows for immediate termination if there is a delay of more than 28 days in delivery. *See* Doc. 87 at 10. It is unknown whether any alleged workmanship issues could have been cured within a 14-day period, as Mitternight never had the opportunity to review any alleged workmanship defects and resolve them. By the very terms of the contract, Mitternight is entitled to notice and a 14-day cure period to resolve workmanship issues before the contract can be terminated for defective workmanship. The Court sees no reason not to enforce the contract as written. Accordingly, Mitternight's motion for summary judgment is granted to the extent that it moves for ICL's breach of contract claim to be limited to theories of delay only.

ICL's breach of contract claim remains pending, but it can proceed only a theory of delayed delivery. This does not exclude evidence of substandard workmanship to the extent that the delay may or may not have been caused, in whole or in part, by such substandard workmanship.

Mitternight's arguments related to contractual damages caps and liquidated damages related to the breach of contract claim are addressed separately in the section below.

**ii. Liquidated damages**

Mitternight argues that damages related to schedule delay are expressly limited by the contractual liquidated damages clause, and that because delay, not workmanship, drives all claimed loss, the contract caps damages and bars consequential damages. Because the Court finds, as noted above, that ICL is limited to the theory of delay for its breach of contract claim, the Court must now consider the validity and applicability of the liquidated damages clause in the Framework Agreement.

In Alabama, "Courts . . . are disposed to lean against any interpretation of a contract which will make the provision one for liquidated damages and, in all cases of doubtful intention, will

pronounce the stipulated sum a penalty." *Camelot Music, Inc. v. Marc Realty & Improv. Co.*, 514 So. 2d 987, 990 (Ala. 1987). Liquidated damages are a sum paid in lieu of performance, whereas a penalty is punishment for default. *Id.* (citations omitted). Alabama courts have identified three criteria to distinguish a valid liquidated damages clause from a penalty:

> First, the injury caused by the breach must be difficult or impossible to accurately estimate; second, the parties must intend to provide for damages rather than for a penalty; and, third, the sum stipulated must be a reasonable pre-breach estimate of the probable loss. See, C. Gamble and D. Corley, *Alabama Law of Damages*, § 5-4 (1982). Determining whether a liquidated damages provision is valid is a question of law to be determined by the trial court based on the facts of each case. *Cook v. Brown*, 408 So. 2d 143 (Ala. Civ. App. 1981).

*Id.* ICL encourages the Court to find the liquidated damages clause is a penalty because it claims the clause does not provide a reasonable pre-breach estimate of damages. Doc. 87 at 13. In support of this argument, ICL states that it has spent over $300,000 in repair costs to the existing tube bundle due to Mitternight's delayed completion, as well of over $3,000,000 paid to a third party to create the replacement tube bundle instead of Mitternight. *Id.*

Sections 3.5 and 3.6 of the Framework Agreement provide:

> Any agreed delivery schedule with respect to the Products shall be binding for Supplier. If Supplier does not deliver the Products prior or at the agreed delivery date or time, Supplier shall be in default without any further notice being required and the following liquidated damages will be applied:

| *Delay* | *Liquidated damages* |
|---|---|
| 1-10 Days | Grace period |
| 10-17 day(s) | 0.1% of the Price per day |
| 17-24 days | 0.3% of the Price per day |
| more than 24 days | 1% of the Price per day |

> The total amount of liquidated damages shall not exceed 5% of the Price. The liquidated damages for delay shall be the Purchaser's sole and only remedy in respect thereof. [In the event that the [delivery of the] Products are [is] considered time-critical by Purchaser, in its reasonable discretion, Purchaser has the option to waive its right to liquidated damages and terminate the delayed Order in accordance with the final sentence of Clause [12.2(a)].] [A delay of more than 28 days with respect to the delivery date shall be deemed a material breach of this Agreement

> and Purchaser shall have the right to terminate this Agreement unilaterally with immediate effect.]

Doc. 1-3 at 5.

First, the Court notes that ICL is the party who drafted the liquidated damages provision in the Framework Agreement. The Court finds it difficult to reconcile ICL's argument that the liquidated damages are not a reasonable estimate of damages when ICL was the one who made those estimates. Just because ICL's damages ended up being significantly higher than what the liquidated damages provision contemplated does not mean that the liquidated damages clause was not a reasonable pre-breach estimate of the damages.

As to the first factor, the Court finds that damages would be difficult to accurately estimate. This is particularly so because the liquidated damages clause applies only if ICL terminates the contract due to Mitternight's delay. Damages due to delay could vary greatly depending on the length of delay, and the amount of time and money spent by both parties at the point in which the contract is terminated due to delay. While damages might include the loss of money already paid to Mitternight for work on the project that ICL ultimately did not receive, it is quite difficult to estimate things such as the cost of cover because ICL used a bid process for the procurement of the tube bundle, and it would be impossible to determine the exact future bids until the breach occurred and ICL sought out new bids for the project. It is also difficult to determine how much of the cost of cover can even be attributed to ICL's "damages" when ICL chose to terminate the contract due to delay because, presumably, ICL did not pay the full price for the tube bundle to Mitternight as the tube bundle was never actually delivered to ICL.

As to the second factor, there is no evidence that the parties intended for the provision to be a penalty. Rather, the provision reads as an amount to be paid by Mitternight to ICL in lieu of Mitternight's completed performance. Accordingly, the Court finds that the parties intended to

provide for damages, rather than a penalty.

As to the third factor, the Court finds that the sums stipulated in the Framework Agreement were a reasonable pre-breach estimate of damages. Damages for delay are not intended to be compensatory damages for other breach of contract claims such as substandard workmanship.

Both parties are sophisticated businesses represented by attorneys. The contract clearly lays out the different requirements for termination based on material breach. However, the contract also provides a path for ICL to get out of the contract without notice after a delay of more than 28 days by Mitternight. With termination for delay, ICL reaps the benefit of immediate termination, but because it does not need to provide Mitternight with an opportunity to cure, damages when choosing this route are limited by a liquidated damages provision. Presumably, these sophisticated parties drafted the termination options this way for a reason. It seems reasonable that damages are limited where Mitternight not have the opportunity to fix the purported issues resulting in termination, and that more extensive damages might be available where Mitternight has had notice of the issues and a two-week period to resolve them before ICL is permitted to terminate the agreement. Furthermore, Mitternight asserts that ICL drafted this provision, and ICL does not refute that assertion. It seems odd for ICL to now turnaround and say this provision is a penalty against it. Rather, ICL chose to terminate the contract due to delay, which limited it to the liqudated damages provision. If ICL wanted the opportunity to pursue more extensive damages, it could have given Mitternight notice to the alleged substandard workmanship issues and 14 days to cure. That is not the path that ICL chose.

Accordingly, the Court finds that the liquidated damages clause of the Framework Agreement is enforceable, and that any recovery of damages for ICL in this case is limited to liquidated damages as provided by the Framework Agreement.

**iii. ICL's breach of warranty claim**

Mitternight also argues that ICL's breach of warranty claim is due to be dismissed because ICL did not provide statutory notice of breach as required by Alabama's UCC, because the Framework Agreement's express warranties are conditioned on delivery, because ICL lacks admissible expert proof of any noncomformity, and because ICL cannot prove warranty damages or causation.

ICL concedes in its response that Mitternight is due to be granted summary judgment in its favor with respect to ICL's breach of warranty claim. The Court agrees.

**iv. ICL's nondelivery of goods claim under Ala. Code § 7-2-713**

Finally, Mitternight argues that summary judgment is due to be granted in its favor on ICL's nondelivery of goods claim for three separate reasons. First, Mitternight asserts that ICL's own failures excuse or extend Mitternight's performance. Second, Mitternight asserts that ICL's alleged cover was not timely, commercially reasonable, or like-kind. Third, Mitternight asserts that ICL's anticipatory termination posture and failure to mitigate break causation.

The Alabama Code provides:

> [T]he measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this article [. . .] but less expenses saved in consequence of the seller's breach.

ALA. CODE § 7-2-713.

Perhaps most relevant to Mitternight's third argument, the Court has difficulty understanding how ICL can, as a matter of law, assert a claim for damages due to the nondelivery of the tube bundle when Defendant terminated the contract that required delivery of the tube bundle before it was ever delivered. At the point in which ICL terminated the contract, Mitternight,

rightfully would have presumed it was no longer required to deliver the tube bundle. From the moment ICL terminated the contract, Mitternight no longer had the duty to deliver the tube bundle. Accordingly, there can be no legal claim for nondelivery and summary judgment is due to be granted in Mitternight's favor on this claim.

## V. CONCLUSION

Accordingly, the Court finds as follows:

1. Mitternight's motion for judgment on the pleadings (Doc. 59) is due to be **GRANTED** and ICL's negligence counterclaim is **DISMISSED**;
2. ICL's motion to strike Mitternight's expert (Doc. 83) is due to be **DENIED**;
3. Mitternight's motion to strike ICL's expert (Doc. 84) is due to be **DENIED**;
4. ICL's motion for summary judgment (Doc. 77) is due to be **GRANTED in part and DENIED in part**. The motion is **GRANTED** as to Mitternight's quasi contract claims (Counts III, IV, and V) and **DENIED** as to all other counts; and
5. Mitternight's motion for summary judgment (Doc. 75) is due to be **GRANTED in part and DENIED in part**. The motion is **GRANTED** as to ICL's breach of warranty and nondelivery of goods claims, and to the extent that ICL is limited to a breach of contract theory of delay and to the recovery of liquidated damages. The motion is **DENIED** as to all other arguments and claims.

**DONE** and **ORDERED** this the 26th day of August 2026.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE